Argued and submitted January 14, reversed and remanded September 1,
respondent's petition for reconsideration filed September 15 and appellant's
response to petition for reconsideration filed September 22 allowed by
opinion November 17, 2010
See 238 Or App 711, 243 P3d 822 (2010)

Nancy E. PETOCK,
*Plaintiff-Appellant,*

*v.*

ASANTE,
fka Asante Health System,
dba Rogue Valley Medical Center,
a domestic nonprofit corporation,
*Defendant-Respondent.*

Jackson County Circuit Court
081041L7; A141216

240 P3d 56

Craig A. Crispin argued the cause and filed the briefs for appellant.

Robyn Ridler Aoyagi argued the cause for respondent. With her on the brief was Tonkon Torp LLP.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

SCHUMAN, J.

**SCHUMAN, J.**

This case involves the interplay between the "Unlawful Discrimination Against Injured Workers" statutes, ORS 659A.040 to 659A.052, and workers' compensation law. The anti-discrimination statutes require an employer to reinstate or reemploy an injured worker who has recovered from a "compensable injury" if the worker applies within three years from the "date of injury." ORS 659A.043(3)(a)(F) (reinstatement); ORS 659A.046(3)(f) (reemployment). Plaintiff was injured in an accident while working for defendant in 2002, and she was injured by a second accident in 2005, also while employed by defendant. The second injury was processed under workers' compensation law as an "aggravation" of the first injury. She applied for reemployment or reinstatement in 2008, within three years of the second accident but not within three years of the first. Defendant refused. The primary issue in this case is whether a compensable *aggravation* of a prior compensable *injury* is itself a new injury for purposes of starting a new three-year limitation period. We hold that it is not. That conclusion raises the second issue: whether there is a disputed question in this case as to whether the second event was, in fact, a new injury or an aggravation as processed. We hold that there is such a fact dispute. For that reason, the trial court erred in granting defendant's motion for summary judgment. We reverse and remand.

Because the court granted defendant's motion for summary judgment, we view the facts and all reasonable inferences that may be drawn from them in favor of plaintiff, the nonmoving party. *Jones v. General Motors Corp.*, 325 Or 404, 408, 939 P2d 608 (1997). In September 2002, plaintiff was working as a dietary aide in a coffee shop at one of defendant's facilities. She injured her right knee at work and had surgery. Her doctor determined that she suffered from "chondrosis of the patellofemoral joint." Afterwards, she was off work for a short time, but she later returned to her position as a dietary aide for defendant.

In April 2005, again while working in defendant's coffee shop, plaintiff felt her right knee "pop," followed by severe pain. She was treated at the Medford Medical Clinic.

Her doctor, as well as defendant's workers' compensation administrator, recommended to plaintiff that she file a workers' compensation claim for an aggravation of her 2002 injury, and she did so. At that time, plaintiff had not yet been able to see a knee specialist regarding this incident.

After filling out the paperwork for her workers' compensation claim, plaintiff was placed on light duty in defendant's medical records office. In September 2005, someone from defendant's human resources department contacted plaintiff in the medical records office and told her to "come down to the workers' compensation office." There, plaintiff was told that the workers' compensation claim had been denied and that plaintiff "should go home." (The denial was subsequently reversed.)

The next month, Dr. Versteeg—the same knee specialist who had performed the 2002 surgery—performed another surgery on plaintiff's knee. Versteeg discovered a tear in plaintiff's medial meniscus, in addition to the pre-existing patellofemoral chondrosis. In his deposition, Versteeg explained that he had not seen the meniscus tear in 2002 and that "[i]t would be hard to say for sure that it was related to the original injury."

After another month, plaintiff told defendant that her doctor had released her for light duty work, but she was told that she could not return until she obtained a full release. That occurred on January 4, 2006, when plaintiff's doctor lifted all restrictions. At that time, plaintiff asked to be returned to work full time, but she was informed by the human resources department that her job had since been filled and that her only option was to look for another job with defendant. In looking through defendant's "job book," however, plaintiff found that there were no positions for which she was qualified.

In March 2008, plaintiff filed this action. Her complaint alleged three claims, two of which are at issue on appeal.[1] In her first claim, plaintiff alleged that defendant

---

[1] Plaintiff brought a claim for retaliatory discharge under ORS 659A.040; the trial court denied defendant's motion for summary judgment on that claim, and it is not at issue on appeal.

"failed and refused to reinstate plaintiff into her former position in violation of ORS 659A.043 * * *." That statute provides, in part:

"(1)  A worker who has sustained a compensable injury shall be reinstated by the worker's employer to the worker's former position of employment upon demand for such reinstatement, if the position exists and is available and the worker is not disabled from performing the duties of such position. * * *

"* * * * *

"(3)  Notwithstanding subsection (1) of this section:

"(a)  The right to reinstatement to the worker's former position under this section terminates when whichever of the following events first occurs:

"* * * * *

"(F)  *Three years elapse from the date of injury.*

"* * * * *

"(5)  Any violation of this section is an unlawful employment practice."

(Emphasis added.) Plaintiff's second claim alleged that defendant "failed and refused to reemploy plaintiff into an available and suitable position in violation of ORS 659A.046 * * *." That statute, much like ORS 659A.043, provides, in part:

"(1)  A worker who has sustained a compensable injury and is disabled from performing the duties of the worker's former regular employment shall, upon demand, be reemployed by the worker's employer at employment which is available and suitable.

"* * * * *

"(3)  Notwithstanding subsection (1) of this section, the right to reemployment under this section terminates when whichever of the following events first occurs:

"* * * * *

"(f)  *Three years elapse from the date of injury.*

"* * * * *

"(6) Any violation of this section is an unlawful employment practice."

(Emphasis added.)

In response to plaintiff's complaint, defendant moved for summary judgment on the ground that plaintiff's rights to reinstatement and reemployment had terminated under ORS 659A.043(3)(a)(F) and ORS 659A.046(3)(f) long before plaintiff made any demand to return to work. Specifically, defendant argued that, for purposes of those statutes, the "date of injury"—the starting point for the three-year reinstatement or reemployment period—refers to the date of a worker's *original* compensable injury, not to a later *aggravation* of that injury. According to defendant, it was "undisputed that [plaintiff's] date of injury occurred in September 2002, more than three years before she allegedly presented [defendant] with a release to return to work * * * or a release for reemployment * * *." Thus, defendant argued, plaintiff's later demands for reinstatement and reemployment were untimely and her resulting claims meritless. The trial court agreed with defendant and granted the motion.

On appeal, plaintiff advances two arguments. First, she challenges the trial court's construction of the relevant statutes. According to plaintiff, the term "injury" in the phrase "date of injury" in ORS 659A.043(3)(a)(F) and ORS 659A.046(3)(f) is not limited to the technical meaning of the term "injury" under workers' compensation statutes, which distinguish between an injury and an aggravation. Rather, plaintiff argues that the everyday dictionary definition of "injury" applies. Second, plaintiff argues that, even if the term "injury" does not encompass the aggravation of an original injury, summary judgment was inappropriate because there was, at the very least, a question of fact as to whether the condition for which she received treatment in 2005 was not an aggravation, but a "new injury"—namely, a tear of the meniscus that was not present earlier.

■ Because it informs both of plaintiff's arguments, we begin with the question of statutory construction: Can the term "date of injury" in the reinstatement and reemployment statutes refer to the date of aggravation, as plaintiff argues,

or does it refer exclusively to the date of the original compensable injury, as the trial court ruled? To answer that question, we examine the statute's text and context, along with any relevant legislative history. *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009).

The phrase "date of injury" in ORS 659A.043 and ORS 659A.046, in plaintiff's view, is not "particularly esoteric," so she invites us to construe the phrase in light of the ordinary meaning of the words "date" and "injury." "Date," plaintiff submits, "ordinarily refers to the day, month, year on which some event occurred"; "injury," meanwhile, is "commonly understood to mean 'a physical harm or damage.' *See Webster's New World Dictionary* at 725 (2d College Ed 1978)." Based on those dictionary definitions, plaintiff concludes, "When the legislature wrote 'date of injury' in ORS 659A.043 and 659A.046, it used a perfectly straightforward phrase that would normally be interpreted, 'the day, month and year on which the injured worker gets hurt.' "

If our task were to read the phrase "date of injury" in isolation, we might be persuaded by plaintiff's reliance on dictionary definitions. But our interpretive method demands more: We must consider statutory context. The timing provisions at issue—"[t]hree years elapse from the date of injury"—describe when the right to reinstatement or reemployment "terminates." ORS 659A.043(3)(a)(F); ORS 659A.046(3)(f). Those rights—*i.e.*, the rights to reinstatement and reemployment—are rights that inure to workers who have "sustained a compensable injury." ORS 659A.043(1); ORS 659A.046(1). Read in that context, it is apparent that the "injury" to which ORS 659A.043(3)(a)(F) and ORS 659A.046(3)(f) refer is the "compensable injury" that triggers the right to reinstatement or reemployment under subsection (1) of the respective statutes. That is to say, the "date of injury" refers to the date of the "compensable injury" covered by the statutes.

"Compensable injury," of course, has a specialized meaning in Oregon law. The Workers' Compensation Law defines a "compensable injury," in part, as "an accidental injury * * * arising out of and in the course of employment requiring medical services or resulting in disability or death;

an injury is accidental if the result is an accident, whether or not due to accidental means, if it is established by medical evidence supported by objective findings * * *." ORS 656.005(7)(a). That same meaning, the Supreme Court has stated, applies to the term "compensable injury" for purposes of reinstatement under ORS 659A.043. *Armstrong v. Rogue Federal Credit Union*, 328 Or 154, 159, 969 P2d 382 (1998) ("As used in ORS 659.415(1) [*renumbered as* ORS 659A.043], the term 'compensable injury' has the same meaning that it has in the Workers' Compensation Law, ORS 656.005(7)(a)."). There is no reason to think that the term means anything different in the context of reemployment under ORS 659A.046, which, for all relevant purposes, is worded identically to the reinstatement statute.

The next question is what constitutes a "compensable injury" in the context of an aggravation claim. ORS 656.273 governs an injured worker's right to "additional compensation for worsened conditions resulting from the original injury"—known as a "claim for aggravation." That statute provides, in part:

"(1) After the last award or arrangement of compensation, an injured worker is entitled to additional compensation for worsened conditions resulting from the original injury. A worsened condition resulting from the original injury is established by medical evidence of an actual worsening of the compensable condition supported by objective findings. However, if the major contributing cause of the worsened condition is an injury not occurring within the course and scope of employment, the worsening is not compensable. A worsened condition is not established by either or both of the following:

"(a) The worker's absence from work for any given amount of time as a result of the worker's condition from the original injury; or

"(b) Inpatient treatment of the worker at a hospital for the worker's condition from the original injury."

The text of ORS 656.273 makes clear that the "compensable injury" for purposes of an aggravation claim is the *original injury*. The "worsening" of the worker's condition is

not a separate "compensable injury," but is instead compensable because of its relation back to the original injury. *See Davis v. SAIF*, 185 Or App 500, 504, 60 P3d 578 (2002) ("A worker's substantive entitlement to aggravation benefits is thus dependent on the relationship of the worsened condition to the original injury."); *see also Dougan v. SAIF*, 339 Or 1, 4, 115 P3d 242 (2005) (distinguishing between the "first phase" of the workers' compensation process that "begins when the worker is injured and initiates a claim" and the "second phase," or "aggravation period, during which the worker may seek additional benefits for 'worsening conditions' resulting from the original injury during a five-year period after the injury"). We made a similar observation regarding the difference between "injury" and "aggravation" in *Welliver Welding Works v. Farmen*, 133 Or App 203, 208, 890 P2d 429 (1995), albeit in the context of construing a different statute:

> "It seems unlikely that the legislature would have chosen 'at the time of injury' to refer to the time of a claim for aggravation. Employer refers to no place in the statutes at which the legislature ever has referred to a claim for a worsened compensable condition as an 'injury.' To the contrary, the statutory provisions concerning claims for aggravation draw a distinction between a 'worsened condition' that gives rise to the aggravation claim and the original 'injury.' *See* ORS 656.273. Under the aggravation statute, in fact, there need only be a worsening of the original compensable condition, the material contributing cause of which is the original injury."

Further, the aggravation statute actually contains the same phrase—"date of injury"—that appears in the reinstatement and reemployment statutes:

> "The claim for aggravation must be filed within five years:
>
> "(a)   After the first notice of closure made under ORS 656.268 for a disabling claim; or
>
> "(b)   *After the date of injury,* provided the claim has been classified as nondisabling for at least one year after the date of acceptance."

ORS 656.273(4) (emphasis added).

In light of the Supreme Court's statement that the term "compensable injury" has the same meaning under ORS 659A.043 as it does in the workers' compensation law, and in light of a statutory scheme in the workers' compensation law that distinguishes between a "compensable injury" and an "aggravation" of that injury—we conclude that the trial court's reading of ORS 659A.043(3)(a)(F) and ORS 659A.046(3)(f) was correct.[2] In the context of an "aggravation claim," the "date of injury" is the date of the original, compensable injury rather than some later date on which the injured worker's condition worsens.

■ That brings us to plaintiff's second argument: The 2005 event that required medical treatment was not an aggravation but a new compensable injury—a tear of the meniscus—that triggered another three-year period in which she could assert her right to reinstatement or reemployment. Defendant's response is three-fold: that there is no evidence in the record to support the contention that the 2005 event was a compensable injury; that plaintiff is "precluded" from making that argument because the Workers' Compensation Board has already resolved that issue contrary to her position here; and that she is "estopped" from making the claim because she has already benefited from a proceeding in which she characterized the event as an aggravation.

At this point, the procedural posture of the case bears emphasis. Defendant moved for summary judgment on the ground that plaintiff's rights to reinstatement and reemployment were time barred. Plaintiff, in opposition to that motion, filed a declaration in which she averred,

"I injured my knee again in April 2005 while I was working at [defendant's coffee shop]. While I was walking quickly in my work area, I felt my knee pop. I had severe pain in my knee and up my leg. My doctor and Doug Sabin, the Workers' Compensation Administrator for [defendant], advised me to file a workers' compensation aggravation claim for my injury."

Plaintiff also offered the deposition testimony that Versteeg, the surgeon who treated her in 2005, provided for purposes of

[2] We are not aware of any helpful legislative history on the question before us.

plaintiff's workers' compensation claim. Versteeg testified in that proceeding that he found a tear of the meniscus that he did not see when he performed an earlier surgery in 2002. He explained, "I didn't see a tear of the meniscus then, so she developed one in the interim. It would be hard to say for sure that it was related to the original [2002] injury." Later, Versteeg stated, "And then the most recent finding was she did have a low tear in the medial meniscus, but I am going to have to say that that was probably not related [to the 2002 injury] because I didn't note it the first time."

The summary judgment record, then, contains plaintiff's declaration that she "felt [her] knee pop" when she was "walking quickly in [her] work area," and that she then had "severe pain" in her knee and leg. The record also contains Versteeg's testimony from the workers' compensation proceedings that claimant's meniscus tear in 2005 might not have been related to the 2002 injury. Viewing plaintiff's averments and Versteeg's testimony in the light most favorable to plaintiff, a factfinder reasonably could conclude that plaintiff suffered a compensable workplace injury—that is, an "accidental injury * * * arising out of and in the course of employment requiring medical services," ORS 656.005(7)(a)—when she tore her meniscus in 2005. *See Armstrong*, 328 Or at 162 (An injured worker need not prove the existence of a compensable injury as part of a workers' compensation proceeding in order to bring a claim for reinstatement; the worker may "prove that the injury was a compensable injury *in the unlawful employment practice proceeding*." (Emphasis in original.)).[3]

██ ██    The remaining question, then, is whether plaintiff is "precluded" or "estopped" from advancing such an argument. Because issue preclusion rests upon the principle that an issue was actually litigated in an earlier proceeding and was necessary to the outcome of that proceeding, the party asserting issue preclusion "bears the responsibility of placing into

---

[3] Defendant argues that Versteeg never affirmatively testified that plaintiff's meniscus tear resulted in major part from the 2005 incident; rather, he testified that he could not determine whether it resulted from the 2002 incident or from the ageing process. Versteeg's testimony, which he himself characterized as "evasive," could support the inference that defendant draws, but that is not a necessary inference.

evidence the prior judgment and sufficient portions of the record, including the pleadings, exhibits, and reporter's transcript of the testimony and proceedings, to enable the court to reach that conclusion with the requisite degree of certainty." *State Farm v. Century Home*, 275 Or 97, 104, 550 P2d 1185 (1976); *accord Najjar v. Safeway, Inc.*, 203 Or App 486, 497, 125 P3d 807 (2005). Defendant has not carried that burden here. Apart from plaintiff's applications for benefits and a few pages of transcript from Versteeg's deposition, the summary judgment record does not contain any record of proceedings before the Workers' Compensation Board; indeed, the record does not even contain the board's *order*. From what we can discern from the summary judgment record, the board may not have been presented with the need to determine whether plaintiff's 2005 event was a new injury as opposed to an aggravation, because quite possibly plaintiff never applied for new injury benefits. In other words, the issue in this trial was whether plaintiff's condition was more properly characterized as an aggravation or a new injury, while the issue before the Worker's Compensation Board may well have been only whether plaintiff's condition was related to her 2002 injury so as to justify compensation. Those issues are not the same. Further, without the record before the board, we do not know that tribunal's reasoning, so we cannot determine whether a resolution of the issue in this case was essential to a final decision on the merits at the board level. It may well be that some prior decision of the Workers' Compensation Board has decided the issues in this case, but in the absence of a record of those administrative proceedings, we have no way to determine whether that is so.

Defendant's judicial estoppel argument suffers the same infirmity, and others as well.

> "Parties invoke judicial estoppel 'under certain circumstances to preclude a party from assuming a position in a judicial proceeding that is inconsistent with the position that the same party has successfully asserted in a different judicial proceeding.' *Hampton Tree Farms, Inc. v. Jewett*, 320 Or 599, 609, 892 P2d 683 (1995). Judicial estoppel is 'primarily concerned with the integrity of the *judicial* process and not with the relationship of the parties[.]' [*Id.*] at 612 (emphasis added)."

*Day v. Advanced M&D Sales, Inc.*, 336 Or 511, 524, 86 P3d 678 (2004). Assuming the doctrine could otherwise be invoked here, the summary judgment record is not sufficient to demonstrate, as a matter of law, that plaintiff took an inconsistent position in a prior proceeding. Judicial estoppel is an affirmative defense, *Hampton Tree Farms, Inc.*, 320 Or at 611, and the absence of a record regarding the prior administrative proceedings is fatal to defendant's position at this stage of the case. That is so because we cannot tell *what* position she took in the prior proceeding. We do know that, in her application for benefits, she characterized her condition as an aggravation, but she averred that she did so on the advice of her doctor and her employer's workers' compensation administrator. We are unwilling to conclude that an employer's workers' compensation officer can advise an employee to categorize a claim one way and employer then argue that she is estopped from characterizing it a different way in a later proceeding—and plaintiff's averment raises a fact question as to whether that occurred here.

In sum, we agree with the trial court's construction of ORS 659A.043(3)(a)(F) and ORS 659A.046(3)(f). The injured worker's right to reinstatement or reemployment terminates three years after the worker suffers the compensable injury, and not three years after it is aggravated by another incident. However, we disagree with the trial court's conclusion that the summary judgment record is susceptible to only one inference as to whether plaintiff suffered a new compensable injury in 2005. Accordingly, we reverse the trial court's grant of summary judgment and remand for further proceedings.

Reversed and remanded.