**Filed: December 30, 2011**

IN THE SUPREME COURT OF THE STATE OF OREGON

NANCY E. PETOCK,

Petitioner on Review,

v.

ASANTE,
formerly known as ASANTE HEATH SYSTEM
dba ROGUE VALLEY MEDICAL CENTER,
a domestic nonprofit corporation,

Respondent on Review.

(CC 08104117; CA A141216; SC S059046)

On review of an order of the Court of Appeals.*

Argued and submitted June 7, 2011.

Craig Crispin, Crispin Employment Lawyers, Portland, argued the cause and filed the brief for petitioner on review.

Robyn Ridler Aoyagi, Tonkon Torp LLP, Portland, argued the cause and filed the brief for respondent on review.

Amy Joseph Pedersen, Stoel Rives LLP, Portland, filed the brief for *amicus curiae* Associated Oregon Industries, Inc.

Before De Muniz, Chief Justice, and Durham, Balmer, Kistler, Walters, and Linder, Justices.**

KISTLER, J.

The decision of the Court of Appeals affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

*Appeal from Jackson County Circuit Court, Mark Schiveley, Judge. 237 Or App 113, 240 P3d 56 (2010).

**Landau, J., did not participate in the consideration or decision of this case.

KISTLER, J.

A worker who suffers a "compensable injury" may seek compensation for the injury and, for three years following the injury, also may demand reinstatement to his or her former position of employment. *See Armstrong v. Rogue Federal Credit Union*, 328 Or 154, 161, 969 P2d 382 (1998). Additionally, for five years following the injury, the worker may seek compensation if the condition resulting from the injury worsens. ORS 656.273. The primary question in this case is whether a workplace injury that plaintiff characterized, in filing a workers' compensation claim, as an aggravation or worsening of an earlier compensable injury can give rise to a new three-year period in which she can demand reinstatement or reemployment.

The trial court held that it could not and granted defendant's summary judgment motion. The Court of Appeals reversed and remanded for further proceedings. *Petock v. Asante*, 237 Or App 113, 240 P3d 56, *adh'd to as clarified on recons*, 238 Or App 711, 243 P3d 822 (2010). Although the Court of Appeals agreed with the trial court that an aggravation of an earlier injury cannot give rise to new reinstatement rights, it concluded that there was a disputed issue of fact as to whether plaintiff had sustained a "new and separate injury" in 2005 that would give rise to those rights. *See* 238 Or App at at 714 (clarifying holding on reconsideration).

On review, plaintiff argues primarily that the Court of Appeals erred in holding that an aggravation of an earlier injury cannot give rise to a right to reinstatement under ORS 659A.043 or a right to reemployment under ORS 659A.046. Defendant, for its part, contends that the Court of Appeals erred in concluding that the medical evidence

1

adduced on summary judgment was sufficient to permit a reasonable trier of fact to find that the injury that plaintiff suffered was "compensable" within the meaning of ORS 656.005(7)(a). We allowed review to consider those issues and now affirm the Court of Appeals decision, although our reasoning differs in some respects from that of the Court of Appeals.

Defendant owns and operates the Rogue Valley Medical Center in Medford.[1] Plaintiff "began [her] employment at the Rogue Valley Medical Center in 1993 and * * * was employed there * * * as a dietary aid in Emilia's Coffee Shop," a café within the medical center. On September 17, 2002, plaintiff injured her knee at work. As she explained, she "started working at 8:30 am" and was "[t]he only waitress at that time." At some point, "[a] lot of people all came in at the same time," and plaintiff had to "move around quickly." When she "was on [her] way back to the register, [her] knee made a loud popping noise" and she "couldn't walk."

Plaintiff's injury caused her to leave work for a short period of time. She underwent knee surgery, after which her doctor diagnosed her with "chondrosis of the patellofemoral joint and the trochlear groove." Plaintiff's knee specialist, Dr. Versteeg, later explained that that condition is "basically an arthritis under [the] kneecap."[2] As a

---

[1]    Because this case arises on defendant's motion for summary judgment, we state the facts in the light most favorable to the plaintiff. *See Clackamas Cty Assessor v. Village at Main St. Phase II*, 349 Or 330, 332, 245 P3d 81 (2010) (stating that standard).

[2]    Versteeg later testified that he did not know whether plaintiff's September 17, 2002, injury had caused her patellofemoral chondrosis, or whether that injury had only caused it to "bec[o]me symptomatic." As he explained, plaintiff's patellofemoral chondrosis "could have been existing there and just aggravated by her work history, I

result of her 2002 injury, plaintiff filed a workers' compensation claim, which defendant accepted.[3] After plaintiff had been "off work for a few weeks after surgery," she recovered from her injury sufficiently to "retur[n] to work on light duty[.]" Finally, on March 5, 2003, plaintiff's doctor determined that she was "medically stationary," and she "returned to [her] former position" at that time. On March 26, 2003, defendant closed plaintiff's workers compensation claim. *See* ORS 656.268(1)(a) (providing for the closure of workers' compensation claims when "[t]he worker has become medically stationary and there is sufficient information to determine permanent disability"); ORS 656.005(17) (a worker is "'[m]edically stationary'" when "no further material improvement would reasonably be expected from medical treatment, or the passage of time").

In April 2005, plaintiff injured her knee a second time while working in Emilia's Coffee Shop. According to plaintiff, at some point during that month, she "was walking quickly in [her] work area, [she] felt [her] knee pop," and she felt "severe pain in [her] knee and up [her] leg." Both plaintiff's doctor, Versteeg, and defendant's workers' compensation administrator advised plaintiff that she should file an "aggravation claim" for a worsened condition resulting from her earlier compensable injury. Plaintiff filed a workers' compensation claim for her second injury on April 26, 2005. On the claim form, plaintiff checked a box stating that she was reporting an "aggravation of original

_____

don't know, it's hard to know what causes those things quite honestly."

[3] Although the record shows that defendant accepted plaintiff's 2002 claim, it does not disclose the condition that defendant accepted.

3

injury." Apparently, there was some delay in processing plaintiff's 2005 claim, and plaintiff was not aware why "it was taking so long to approve [her] to see" her doctor for treatment of her second knee injury. She filed another claim form on July 13, 2005, again characterizing her second knee injury as an "aggravation" of the injury that she had sustained on September 17, 2002.

Following her second knee injury, plaintiff was "placed on light duty [work] in the Medical Records Office." After approximately five months, defendant denied plaintiff's aggravation claim and removed her from light-duty work. As plaintiff explained:

> "On September 15, 2005, the Human Resources Department called me in the Medical Records Office and told me to come down to the workers' compensation office. The woman who met me there informed me that my workers' compensation claim had been denied. She told me that this would be my last day, and that I should go home."

After she was removed from light-duty work, plaintiff requested a medical leave of absence under the Family and Medical Leave Act, 29 USC §§ 2601 to 2654, and the Oregon Family Leave Act, ORS 659A.150 to 659A.186. Defendant granted her request. At some later point, according to the parties' briefing, the Workers' Compensation Board ruled in plaintiff's favor on her 2005 claim.[4]

On October 20, 2005, plaintiff underwent surgery to treat her second knee injury. In the course of that operation, Versteeg discovered "a tear of the posterior horn

---

[4] The parties submitted no evidence in this action regarding how or why the Workers' Compensation Board resolved plaintiff's 2005 workers' compensation claim. Plaintiff, however, represented in a memorandum opposing summary judgment that the Workers' Compensation Board had ruled in her favor.

of [plaintiff's] medial meniscus." It was not clear to the doctor exactly when plaintiff had sustained the tear to her meniscus. He explained, "I didn't see it the first time, so I don't think it was there, could it have been there, I suppose it's possible. I didn't see a tear of the meniscus then, so she developed one in the interim." As to the condition with which Versteeg had diagnosed plaintiff following her first knee injury in 2002 -- "the chrondrosis of the patellofemoral joint and the trochlear groove" -- he stated that "that [condition] was also noted the second time around too [*i.e.*, during plaintiff's October 20, 2005 surgery,] and it is still there and it didn't look any worse, so that was encouraging and I think it actually looked a little better."

In November 2005, after plaintiff recovered from her second surgery, Versteeg cleared her to return to work on a light-duty basis. Accordingly, plaintiff contacted defendant to notify it that she "had been released for light duty and could come back to work." Defendant did not reemploy her at that time, however. Instead, as plaintiff explained, defendant "told me that I could not come back on light duty because I was not on workers' compensation leave. [Defendant] told me [that] I was required to have a full release, and that I could come back to work only then." Plaintiff received a full release on January 4, 2006. The next day, she went to Emilia's Coffee Shop "so that [she] could arrange to get back on the schedule." When she arrived, she "was told that [her] job had been filled, and that [her] only option was to go through the jobs book and apply for other jobs." She did so, but "the only available jobs were for nurses and other positions" for which plaintiff lacked "the required experience and education." All of plaintiff's available leave expired on January 22, 2006, and on that date defendant sent

5

her a formal notice of termination.[5]

Plaintiff then brought this action, alleging that defendant had violated two statutes that protect injured workers from unlawful discrimination. Those statutes, ORS 659A.043 and ORS 659A.046, set out the terms under which "[a] worker who has sustained a compensable injury" may demand to return to the service of his or her employer. *See* ORS 659A.043(1) and ORS 659A.046(1). The first statute, ORS 659A.043, gives an injured worker a right to demand reinstatement to the same position that the worker formerly held. *See* ORS 659A.043(1) (a worker "shall be reinstated by the worker's employer to the worker's former position of employment" if certain conditions are met). The second statute, ORS 659A.046, provides a similar right to workers who cannot be reinstated to their former position because they are not able to perform the duties of that position. Those workers have a right to be reemployed by their former employer in a different "available and suitable" position. *See* ORS 659A.046(1) (providing that right under certain conditions). Both rights "terminate" after "[t]hree years elapse from the date of injury." ORS 659A.043(3)(a)(F) (reinstatement); ORS 659A.046(3)(f) (reemployment).

In her complaint, plaintiff alleged that, following her April 2005 knee injury, defendant unlawfully refused her demands for reemployment and reinstatement.

---

[5] As noted, plaintiff initially had taken a medical leave of absence under the federal Family and Medical Leave Act and the Oregon Family Leave Act, both of which provided her with job protection. That leave expired on October 22, 2005, after which plaintiff exhausted her remaining leave under defendant's internal policy providing for a temporary extension of healthcare benefits.

6

More specifically, plaintiff claimed that, in refusing to permit her to return to work on a light-duty basis after Versteeg cleared her to do so in November 2005, defendant failed to reemploy her "at employment which [was] available and suitable," as ORS 659A.046(1) required. Additionally, plaintiff claimed that, in refusing to allow her to resume her former job at Emilia's Coffee Shop after she received a full release to return to work in January 2006, defendant failed to reinstate her "to [her] former position of employment" in violation of ORS 659A.043(1).[6]

Defendant moved for summary judgment in response to plaintiff's claims. Defendant contended that plaintiff's rights to demand reinstatement and reemployment had terminated on September 17, 2005, because the "date of [the] injury" from which plaintiff had three years to demand reinstatement or reemployment was September 17, 2002, the date on which plaintiff first had injured her knee at work. Plaintiff opposed summary judgment, arguing that, even though she had treated her April 2005 knee injury as an "aggravation" in seeking workers' compensation benefits, nothing in ORS 659A.043 and ORS 659A.046 precluded her 2005 injury from giving rise to a new three-year period in which she could demand reinstatement or reemployment. Among other things, plaintiff argued that, in providing that reinstatement and reemployment rights terminate after "[t]hree years elapse from the date of injury," the phrase "date of injury" should be given its plain meaning, and should encompass any "injury" that causes a

---

[6] Plaintiff advanced a third claim for relief based on ORS 659A.040. She alleged that her "use of the workers' compensation system" was "[a] substantial motivating cause of defendant's decision not to reemploy and not to reinstate" her. That claim is not before us.

7

worker to leave work.

The trial court granted defendant's summary judgment motion. That court started from the proposition that, because plaintiff had filed an aggravation claim with her employer, she "cannot now argue [that] her 2005 injury was a 'new' injury rather than an aggravation claim." It then reasoned that, as a matter of statutory construction, an aggravation claim is distinct from a claim that a worker has suffered a compensable injury. It also reasoned that the "date of injury" from which a worker has three years to seek reinstatement or reemployment is the date that a worker suffers a compensable injury, not an aggravation of an earlier injury. It followed, the trial court concluded, that plaintiff's reinstatement and reemployment rights ran from September 17, 2002, the date she suffered a compensable injury. They did not run from April 2005, the date she suffered an aggravation of her 2002 compensable injury. The trial court accordingly granted defendant's summary judgment motion in part and entered a limited judgment on plaintiff's claims for relief under ORS 659A.043 and ORS 659A.046.[7]

Plaintiff appealed, renewing her argument that nothing in ORS 659A.043 or ORS 659A.046 precluded her April 2005 knee injury from giving rise to new reinstatement and reemployment rights. As the Court of Appeals understood plaintiff's

[7] The trial court determined that a question of fact precluded granting summary judgment on plaintiff's third claim for relief. On plaintiff's unopposed motions, the trial court abated the proceedings on that claim for relief and entered a limited judgment under ORCP 67 B dismissing plaintiff's reinstatement and reemployment claims for relief, finding "that there [was] no just reason for delay in the entry of a limited judgment to permit plaintiff to seek review of the dismissal of such claims." *See* ORCP 67 B (permitting that disposition); *Interstate Roofing, Inc. v. Springville Corp.*, 347 Or 144, 152-53, 218 P3d 118 (2009) (discussing the same).

8

argument, it entailed two issues:

> "First, * * * [a]ccording to plaintiff, the term 'injury' in the phrase 'date of injury' * * * is not limited to the technical meaning of the term 'injury' under workers' compensation statutes, which distinguish between an injury and an aggravation. * * *. Second, plaintiff argues that, even if the term 'injury' does not encompass the aggravation of an original injury, summary judgment was inappropriate because there was, at the very least, a question of fact as to whether the condition for which she received treatment in 2005 was not an aggravation, but a 'new injury' -- namely, a tear of the meniscus that was not present earlier."

*Petock*, 237 Or App at 118.

In analyzing the first issue, the Court of Appeals explained that the three-year period for seeking reinstatement and reemployment runs from the date that an employee suffers a compensable injury within the meaning of ORS 656.005(7)(a). *Id.* at 120. It also ruled that, as a matter of statutory construction, an aggravation or worsening of an earlier injury "is not a separate 'compensable injury,' but is instead compensable because of its relation back to the original injury." *Id.* at 120-21 (citing ORS 656.273(1)). It followed, the Court of Appeals reasoned, that, in the context of reinstatement and reemployment claims, "the 'date of injury' [from which the worker's rights to reinstatement and reemployment run] is the date of the original, compensable injury rather than some later date on which the injured worker's condition worsens." *Id.* at 122.

The Court of Appeals concluded that, because plaintiff had not sought reinstatement or reemployment within three years of her 2002 injury, she could assert a right to reinstatement or reemployment only if the 2005 injury resulted in a "new and separate" injury, as opposed to an aggravation of the condition resulting from the 2002 compensable injury. *See Petock*, 238 Or App at 714 (on reconsideration). On that issue,

9

the Court of Appeals reasoned that Versteeg's testimony that he had observed a tear in plaintiff's meniscus during the second surgery -- one that he had not seen during plaintiff's first knee surgery in 2002 -- would permit a reasonable juror to find that plaintiff's April 2005 knee injury was "a new and separate" compensable injury that gave rise to a new three-year period in which plaintiff could seek reinstatement and reemployment. *Id.* Accordingly, the Court of Appeals held that the trial court had erred in granting defendant's summary judgment motion, reversed the trial court's judgment, and remanded the case for further proceedings. *Petcock,* 237 Or App at 125.

On review, plaintiff raises primarily one argument. She acknowledges that the phrase "the date of injury," from which a three-year period to seek reinstatement runs, refers to the date of a "compensable injury," as that phrase is used in ORS 659A.043(1).[8] She contends, however, that "an aggravation * * * is a 'compensable injury'" within the meaning of ORS 659A.043(1) and is therefore sufficient to trigger a new three-year period in which a worker may seek reinstatement. Defendant argues, in response, that an aggravation or worsening of an earlier injury can never itself be a compensable injury. Additionally, defendant takes issue with the Court of Appeals' reasoning that the medical evidence on summary judgment was sufficient to permit a reasonable inference that plaintiff suffered a "new and separate" compensable injury.[9]

---

[8]     For the purposes of the issues that the parties raise, ORS 659A.043 and ORS 659A.046 are identical. In discussing the parties' arguments, we refer only to ORS 659A.043 for ease of reference. Our conclusions regarding ORS 659A.043 apply equally to ORS 659A.046.

[9]     Defendant raised this issue as a contingent request for review in its

We begin with the issue that plaintiff raises and first set out the text of ORS 659A.043. ORS 659A.043(1) provides that, subject to certain conditions not at issue here:

> "A worker who has sustained a compensable injury shall be reinstated by the worker's employer to the worker's former position of employment upon demand for such reinstatement."

ORS 659A.043(3)(a) provides that "[t]he right to reinstatement to the worker's former position under this section terminates when whichever of the following [six] events first occurs." The first five events are: (1) a medical determination that that worker "cannot return to the former position of employment"; (2) the worker's "eligibil[ity for] and participat[ion] in vocational assistance under ORS 656.340"; (3) the worker's "accept[ance of] suitable employment with another employer after becoming medically stationary"; (4) the worker's refusal of a "bona fide offer from the employer of [suitable] light duty or modified employment"; and (5) the worker's failure to request reinstatement within seven days after being notified by certified mail that the worker's attending physician or a specified medical professional has released the worker for employment. ORS 659A.043(3)(a)(A)-(E). Finally, ORS 659A.043(3)(a)(F) provides that a worker's right to reinstatement will terminate when "[t]hree years elapse from the date of injury."

Under the plain text of ORS 659A.043(1), a worker's right to reinstatement arises when he or she sustains a "compensable injury." That right terminates when

_____

response to plaintiff's petition for review. *See* ORAP 9.10(1) (providing for contingent requests for review); ORAP 9.20(2) (providing that, unless the court limits the questions on review, "the questions before the Supreme Court include all questions * * * that the petition or the response claims were erroneously decided").

11

"[t]hree years elapse from the date of injury." ORS 659A.043(3)(a)(F). As plaintiff correctly acknowledges in this court, the "date of injury" in ORS 659A.043(3)(a)(F) refers to the date of the "compensable injury" in ORS 659A.043(1) that gave rise to the right to reinstatement in the first instance. Textually, that is the only logical referent. As we read ORS 659A.043, subsection (1) provides that the occurrence of a compensable injury will give rise to a right to reinstatement, and subparagraph (3)(a)(F) identifies the outside time limit on the exercise of that right: If three years have elapsed from the date of the compensable injury that gave rise to a worker's reinstatement rights, then those rights expire.

Plaintiff does not dispute that proposition in this court. Rather, she argues that, because an aggravation or worsening of an existing condition is an "injury" for which workers' compensation benefits are available, her 2005 aggravation was a "compensable injury" within the meaning of ORS 659A.043(1). In analyzing plaintiff's argument, we note that the phrase "compensable injury" is a defined term for the purposes of the workers' compensation statutes, which form the backdrop against which ORS 659A.043 was enacted. Moreover, in *Armstrong*, this court explained that, as used in ORS 659A.043(1),

> "the term 'compensable injury' has the same meaning that it has in the Workers' Compensation Law, ORS 656.005(7)(a). Generally, a 'compensable injury' is an accidental injury that 'arises out of and in the course of employment.'"

*Armstrong*, 328 Or at 159 (quoting ORS 656.005(7)(a)) (footnote omitted). That reasoning was integral to the court's holding in *Armstrong* and controls our resolution of

12

plaintiff's argument here. Following *Armstrong*, we conclude that plaintiff can establish that she suffered a "compensable injury" in 2005 that will give rise to a new three-year period in which she may seek reinstatement only if the injury that she sustained was a "compensable injury" within the meaning of ORS 656.005(7)(a); that is, plaintiff must show that she suffered "an accidental injury * * * arising out of and in the course of employment requiring medical services or resulting in disability or death * * *." *See* ORS 656.005(7)(a) (defining "compensable injury").

The parties disagree whether the 2005 injury that plaintiff sustained met that standard. Plaintiff appears to take the position that every aggravation will be a compensable injury that gives rise to a new three-year period in which she may seek reinstatement. Defendant appears to take the position that no aggravation can ever constitute a compensable injury. And there is a suggestion in the Court of Appeals' opinion that a new injury will be compensable only if it is separate from the condition resulting from an earlier compensable injury. As explained below, we think that both parties err in attempting to convert what is, at bottom, a fact-specific issue into a question of law.

To the extent that plaintiff argues that every worsening that gives rise to benefits under ORS 656.273 constitutes a "compensable injury," as that phrase is used in ORS 656.005(7)(a), her argument sweeps too broadly. ORS 656.273(1) provides that "an injured worker is entitled to additional compensation for worsened conditions resulting from the original injury." Under ORS 656.273, a worker need not show that he or she suffered a new compensable injury to establish an aggravation claim. *See SAIF v.*

13

*Walker*, 330 Or 102, 118, 996 P2d 979 (2000) (explaining what a worker must show to establish an aggravation claim).  It is sufficient if the condition resulting from the original injury has worsened, *see id.*, unless "the major contributing cause of the worsened condition is an injury *not* occurring within the course and scope of employment," ORS 656.273(1) (emphasis added).[10]

Conversely, to the extent that defendant argues that the same set of facts can never give rise to both an aggravation claim and a compensable injury claim, its argument also sweeps too broadly.  Suppose a worker suffers, at different times, two workplace injuries while working for the same employer, and the second injury aggravates a preexisting condition that resulted from the earlier compensable injury.  If the later injury both combined with the preexisting condition "to cause or prolong disability or a need for treatment" and was the major contributing cause of the disability or need for treatment, then the worker could bring a claim for a compensable injury.  *See* ORS 656.005(7)(a)(B) (defining when a combined condition will be compensable).

The worker also could bring an aggravation claim on the theory that the worsened condition resulted from the original compensable injury and that the major

---

[10]    ORS 656.273(1) provides, in part:

"After the last award or arrangement of compensation, an injured worker is entitled to additional compensation for worsened conditions resulting from the original injury.  A worsened condition resulting from the original injury is established by medical evidence of an actual worsening of the compensable condition supported by objective findings.  However, if the major contributing cause of the worsened condition is an injury not occurring within the course and scope of employment, the worsening is not compensable."

14

contributing cause of the worsened condition was not an injury that occurred outside the course and scope of employment. *See* ORS 656.273(1) (providing that a worsened condition resulting from an earlier injury is not compensable if the major contributing cause of the worsening did not occur in the course and scope of employment). Even if the second workplace injury was the major contributing cause of the worsened condition, that does not mean that the worsened condition did not "result" from the first injury within the meaning of ORS 656.273(1). In short, we disagree with defendant to the extent that it argues that the same set of facts can never give rise to both an aggravation claim and a compensable injury claim.[11]

Finally, there is a suggestion in the Court of Appeals opinion that a second workplace injury will be compensable only if the resulting condition is separate from the condition that resulted from the earlier compensable injury. *See Petock*, 237 Or App at 123 (explaining that plaintiff's 2005 injury would be compensable if it resulted in a torn meniscus as opposed to a worsening of her patellofemoral chondrosis). As explained above, however, to the extent that an otherwise compensable injury combines with a preexisting condition resulting from an earlier compensable injury to cause or prolong disability or the need for treatment, the second injury will be compensable so long as it is the major contributing cause of the disability or need for treatment. Conversely, if the second injury did not combine with a preexisting condition, then the inquiry would be

---

[11]     There may be other situations in which the same set of facts can give rise to both an aggravation claim and a compensable injury claim. Our point is not to exhaust the possible factual situations but to show that the absolute position that defendant has advanced is not well taken.

whether the second injury was a "compensable injury" as defined in ORS 656.005(7)(a). *See* ORS 656.005(7) (distinguishing among compensable injuries, consequential conditions resulting from compensable injuries, and otherwise compensable injuries that combine with preexisting conditions).[12]

In our view, the parties err in arguing that, as a matter of law, an aggravation either always will result in a compensable injury or never will do so. Rather, the question before the trial court on summary judgment was a simpler one: whether the facts that gave rise to plaintiff's 2005 workplace injury were sufficient to permit a reasonable inference that the injury was compensable within the meaning of ORS 656.005(7)(a). If they were, then defendant cannot prevail on summary judgment on the ground that plaintiff's November 2005 demand for reemployment and her January 2006 demand for reinstatement were untimely. However, if no reasonable juror could find that the 2005 injury was compensable, then defendant's summary judgment motion was well taken.

On that issue, plaintiff submitted evidence that, "while [she] was working at Emilia's" Coffee Shop in 2005, she "was walking quickly in [her] work area, [she] felt [her] knee pop," and she felt "severe pain in [her] knee and up [her] leg." As a result of that workplace injury, she required a second surgery on her knee. At first blush, it is

---

[12]    Because plaintiff's 2002 and 2005 injuries occurred while she was working for the same employer, ORS 656.308(1) does not apply. That statute specifies when a subsequent employer will be responsible for a "new compensable injury involving the same condition" that an earlier employer had accepted. *See generally Multifoods Specialty Distribution v. McAtee*, 333 Or 629, 43 P3d 1101 (2002) (discussing that statute).

difficult to see why that evidence is not sufficient to permit a reasonable juror to find that plaintiff suffered "an accidental injury * * * arising out of and in the course of employment requiring medical services[.]" *See* ORS 656.005(7)(a) (defining a compensable injury).

Over the course of this litigation, defendant has advanced three arguments why it should prevail on summary judgment. In the Court of Appeals, defendant noted that, when plaintiff filed a claim for workers' compensation benefits in 2005, she checked a box on the claim form that states "[r]eport of aggravation of original injury." It followed, defendant argued, that issue preclusion barred plaintiff from arguing in this action that her 2005 injury was a new compensable injury rather than an aggravation and that, as a matter of law, an aggravation and a compensable injury are mutually exclusive statutory categories. In defendant's view, if plaintiff's 2005 injury was an aggravation of an earlier injury, it cannot be a compensable injury and her reinstatement claim necessarily fails.

Regarding defendant's issue preclusion argument, we note that issue preclusion is an affirmative defense, for which defendant bears the burden of persuasion. *See ZRZ Realty v. Beneficial Fire and Casualty Ins.*, 349 Or 117, 138, 241 P3d 710 (2010) (so stating); *Keller v. Armstrong World Industries, Inc.*, 342 Or 23, 38 n 12, 147 P3d 1154 (2006) (same). If defendant wanted to rely on issue preclusion as a basis for seeking summary judgment, it had the burden of producing evidence to establish that defense. *See Keller*, 342 Or at 38 n 12 ("On summary judgment, a party has the burden to produce evidence as to which it has the burden of persuasion at trial. ORCP 47 C.").

17

Defendant, however, did not introduce any evidence to establish how or why the Workers' Compensation Board resolved plaintiff's 2005 workers' compensation claim. As the Court of Appeals correctly recognized, the factual predicate for defendant's issue preclusion argument was absent.[13] *See Petock*, 237 Or App at 123-24.

Before this court, defendant acknowledges that, on this record, it cannot establish issue preclusion. However, it reiterates its argument that, as a statutory matter, aggravation claims are distinct from and derivative of compensable injury claims. The point of defendant's argument is not completely clear, however. To the extent that defendant argues that the fact that plaintiff characterized her 2005 injury as an aggravation on the worker's compensation claim form somehow precludes her from arguing in this action that her injury was a compensable injury within the meaning of ORS 656.005(7)(a), we do not understand the basis for that argument.

This court explained in *Armstrong* that an injured worker need not establish in a workers' compensation proceeding that he or she suffered a compensable injury before bringing a reinstatement claim under ORS 659A.043. *Armstrong*, 328 Or at 162-63. The reinstatement claim can proceed independently. *Id.* Moreover, as noted above, defendant cannot argue that, on this record, issue preclusion prevents plaintiff from arguing in this action that her 2005 injury was a compensable injury. Even if defendant were correct that the same facts cannot give rise to an aggravation claim and a

---

[13]     Because there was no factual predicate for defendant to assert issue preclusion, we need not decide whether, if the factual predicate existed, issue preclusion either would apply or would act as a bar to proving a compensable injury.

18

compensable injury claim (a proposition with which we have noted our disagreement), we fail to see the relevance of that proposition in the context of defendant's summary judgment motion. On this record, plaintiff was free to argue that her 2005 injury was a compensable injury within the meaning of ORS 656.005(7)(a).[14]

Finally, defendant argues that the Court of Appeals erred in concluding that the medical evidence was sufficient to permit a reasonable trier of fact to find that the 2005 injury caused the torn meniscus. That was not the ground on which the parties litigated the summary judgment motion before the trial court, however. Rather, the opening memorandum that defendant filed in the trial court assumed, without explaining the basis for the assumption, that the only compensable injury that plaintiff suffered was the 2002 injury. In its reply memorandum, defendant made that assumption explicit; it stated that, having filed aggravation claims for the 2005 injury, plaintiff "cannot now convert these aggravation claims into a new injury to suit her current litigation strategies." Defendant accordingly contended that only the 2002 injury was a compensable injury that gave rise to reinstatement and reemployment rights; however, plaintiff did not demand reinstatement and reemployment until three years had elapsed

---

[14]    In *Armstrong*, the employer had denied the employee's workers' compensation claim, and the question was whether the employee could pursue a reinstatement claim under ORS 659A.043 when the Workers' Compensation Board had not yet determined whether the injury was compensable. *See* 328 Or at 163. This court held that the worker could. *Id.* The court did not have occasion in *Armstrong* to consider whether a final determination in a workers' compensation proceeding would have a preclusive effect in a proceeding for reinstatement and reemployment under ORS 659A.043 and ORS 659A.046. This case does not present that issue either, and we express no opinion on it.

from the date of that injury.

In the Court of Appeals, defendant argued both in its answering brief and also in its petition for reconsideration that, to the extent that plaintiff was arguing that she sustained a new compensable injury in 2005, the medical evidence in the record was not sufficient to support that contention. In effect, defendant advanced a different ground for sustaining the trial court's summary judgment ruling than it had advanced before the trial court.[15] Defendant raises the same argument before this court in challenging the Court of Appeals' conclusion that there was sufficient evidence of a compensable injury in 2005 to deny defendant's summary judgment motion.

Given that background, we conclude that this is a case in which plaintiff might have offered other, additional evidence if defendant had sought summary judgment on the ground it now advances for affirming the trial court's ruling. Put differently, we cannot say that the record is "materially * * * the same one that would have been developed had [defendant] raised the alternative basis for affirmance below" that it now asserts. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (explaining when a court may affirm a ruling on grounds not urged below). In these circumstances, we cannot rely on the "right for the wrong reason"

---

[15]     We note that, before the trial court, no one discussed whether the 2005 injury combined (or did not combine) with any preexisting condition or, if it were a combined condition, who had the burden of proving that the 2005 injury was the major contributing cause of plaintiff's need for treatment. *Cf.* ORS 656.266(2) (providing that, in a workers' compensation proceeding, once the worker establishes an otherwise compensable injury, the employer has the burden of proving that the injury is not the major contributing cause of a combined condition).

doctrine to uphold the trial court's ruling.  *See id.*  Rather, we conclude that, on this

record, the Court of Appeals correctly reversed the trial court's summary judgment ruling

and remanded for further proceedings.

The decision of the Court of Appeals is affirmed.  The judgment of the

circuit court is reversed, and the case is remanded to the circuit court for further

proceedings.