No. 80    December 22, 2016    717

# IN THE SUPREME COURT OF THE STATE OF OREGON

KARLYN EKLOF,
*Petitioner on Review,*

*v.*

Heidi STEWARD,
Superintendent,
Coffee Creek Correctional Facility,
*Respondent on Review.*

(CC C120242CV; CA A154212; SC S063870)

En Banc

On review from the Court of Appeals.*

Argued and submitted September 23, 2016.

Jason Weber, O'Connor Weber LLC, Portland, argued the cause and filed the brief for petitioner on review.

Timothy A. Sylwester, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Janis C. Puracal, Oregon Innocence Project, Portland, Mathew W. dos Santos, American Civil Liberties Union Foundation of Oregon, Portland, and Rankin Johnson IV, Oregon Criminal Defense Lawyers Association, Portland, filed the brief for those *amici curiae*. Also on the brief were Steven T. Wax, Alice B. Kaplan, and Erik Blumenthal.

BREWER, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to that court for further proceedings.

_____
\* Appeal from Washington County Circuit Court, Thomas W. Kohl, Judge. 273 Or App 789, 359 P3d 570 (2015).

**BREWER, J.**

Under *Brady v. Maryland*, 373 US 83, 87, 83 S Ct 1194, 10 L Ed 2d 215 (1963), a prosecutor's withholding of favorable evidence from a criminal defendant "violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Petitioner in this successive action for post-conviction relief—who is serving a sentence of life imprisonment without the possibility of parole for aggravated murder—seeks review of a Court of Appeals decision that upheld summary judgment for the state on the ground that petitioner's *Brady* violation claim was barred as a matter of law under ORS 138.510(3) and ORS 138.550(3).[1] *Eklof v. Steward*, 273 Or App 789, 359 P3d 570 (2015). Petitioner asserts that she is entitled to pursue her *Brady* violation claim despite the bars against untimely and successive petitions set out in those statutes, and that the trial court erred in concluding that her petition was barred as a matter of law.[2] As explained below, we conclude that the trial court erred in granting the state's motion for summary judgment on petitioner's *Brady* violation claim. Accordingly, we reverse and remand.

---

[1] ORS 138.510(3) provides, in part:

"A petition pursuant to ORS 138.510 to 138.680 must be filed within two years of the following, unless the court on hearing a subsequent petition finds grounds for relief asserted which could not reasonably have been raised in the original or amended petition:

"(a) If no appeal is taken, the date the judgment or order on the conviction was entered in the register.

"(b) If an appeal is taken, the date the appeal is final in the Oregon appellate courts."

ORS 138.550(3) provides:

"All grounds for relief claimed by petitioner in a petition pursuant to ORS 138.510 to 138.680 must be asserted in the original or amended petition, and any grounds not so asserted are deemed waived unless the court on hearing a subsequent petition finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition. However, any prior petition or amended petition which was withdrawn prior to the entry of judgment by leave of the court, as provided in ORS 138.610, shall have no effect on petitioner's right to bring a subsequent petition."

[2] Petitioner also argues that the trial court erred in granting summary judgment as to an inadequate assistance of counsel claim concerning a jury instruction; we reject that argument without discussion.

## I.   FACTS AND PROCEDURAL HISTORY

Petitioner was convicted of aggravated murder in 1995, based on the theory that she and an accomplice, Jeffrey Tiner, murdered James Salmu. *See generally State v. Tiner*, 340 Or 551, 135 P3d 305 (2006), *cert den*, 549 US 1169 (2007) (describing evidence underlying Tiner's aggravated murder conviction). The Court of Appeals affirmed petitioner's conviction without opinion. *State v. Eklof*, 154 Or App 448, 960 P2d 397 (1998), *rev den*, 328 Or 331 (1999). In 1999, shortly after her conviction became final, petitioner filed her first action for post-conviction relief; her petition in that case, which did not assert a *Brady* violation claim, ultimately was dismissed.

In 2012, petitioner again sought post-conviction relief in the present action. In her second amended petition, which is at issue here, petitioner alleged, in pertinent part:

"John Distabile and David Tiner were key witnesses against Petitioner in case no. 109404750 (Lane County) [in which petitioner was convicted of aggravated murder].

"* * * * *

"On March 1, 201[2], attorney Andy Simrin (Attorney for Petitioner's co-defendant Jeffrey Tiner) mailed to counsel for this Petitioner a computer 'thumb drive' containing copies of four exhibits from the post-conviction case of Jeffrey Tiner, who had also been convicted of murdering James Salmu. Those exhibits included the prosecution file for the case against this Petitioner, the prosecution file for the case against Jeffrey Tiner, California Department of Justice records relating to David Tiner's criminal history (David Tiner is the brother of co-defendant Jeffrey Tiner) and NCIC records relating to David Tiner's criminal history.

"Among the materials in the prosecution file for the case against Jeffrey Tiner was a set of police reports that would have been valuable in impeaching John Distabile if they had been disclosed to Petitioner's attorneys in case no. 109404750 (Lane County).

"The Distabile impeachment materials described in the preceding paragraph were never disclosed to any attorney

working on behalf of Petitioner until Mr. Simrin caused them to be delivered to Petitioner's attorney in this post-conviction proceeding.

"David Tiner's criminal history was never disclosed to any attorney working on behalf of Petitioner until Mr. Simrin caused them to be delivered to Petitioner's attorney in this post-conviction proceeding.

"David Tiner's criminal history would have had impeachment value if it had been disclosed to Petitioner's attorneys in case no. 109404750."

Based on those allegations, petitioner claimed that there had been a substantial denial of her due process rights under the Fourteenth Amendment to the United States Constitution. Petitioner further alleged that she previously had sought post-conviction relief in the 1999 action, that relief had been denied in that action, and that the *Brady* violation claim in this action could not reasonably have been raised in the 1999 action.

In support of her *Brady* violation claim in this case, petitioner submitted the trial transcript and other materials related to her underlying criminal case, as well as police reports concerning John Distabile and records of David Tiner's criminal history that, she asserted, had been withheld by the prosecution in her criminal case. The police reports indicated that, when Distabile initially was interviewed about the murder, he gave a somewhat different account from his testimony at petitioner's criminal trial; thus, the earlier account could have been offered to impeach Distabile's trial testimony. In addition, the materials related to David Tiner's criminal history could have been offered at petitioner's criminal trial to impeach Tiner's testimony. *See generally Strickler v. Greene*, 527 US 263, 281-82, 119 S Ct 1936, 144 L Ed 2d 286 (1999) (holding that *Brady* applies not only to exculpatory information withheld from defendant, but also to favorable impeachment information).

The state filed an answer to the petition in which it alleged as "affirmative defenses" that this action was barred under the two-year limitations period prescribed by ORS 138.510(3)(b), and was barred as a successive petition

by ORS 138.550(3).[3] The state then sought summary judgment, asserting, as pertinent here, that petitioner's *Brady* violation claim was barred: (1) under ORS 138.510(3)(b), on the ground that she reasonably could have raised that claim within two years after the criminal judgment was final; and (2) under ORS 138.550(3), on the ground that she could have raised the claim in her original post-conviction action. The state explained that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law, because

> "petitioner has not alleged any ultimate facts demonstrating that she was reasonably unable, when she first sought post-conviction relief, to discover that impeachment material was allegedly withheld by a prosecutor or not made available to petitioner's underlying defense counsel in 1995."

In her response to the motion, petitioner reiterated that the state had withheld materials from her criminal trial counsel that would have been useful in impeaching Distabile and David Tiner. Petitioner pointed out that she and Jeffrey Tiner had been tried separately and that different prosecutors had handled their respective cases.[4] Petitioner submitted evidence that her criminal trial counsel had not been provided with the *Brady* materials, and that information about David Tiner's criminal history would not have been reasonably available to her post-conviction counsel from other sources in the 1999 action. Petitioner therefore asserted that she could not reasonably have obtained

---

[3] Although the state labeled those defenses as affirmative defenses, and, generally speaking, statute of limitations defenses are affirmative defenses on which a defendant bears the burden of persuasion, *see T. R. v. Boy Scouts of America*, 344 Or 282, 299, 181 P3d 758 (2008) (so noting), the parties and the trial court properly treated the question of whether petitioner's claim was barred under either of those statutes as a matter on which she would ultimately bear that burden. *See generally Verduzco v. State of Oregon*, 357 Or 553, 565, 355 P3d 902 (2015) (ORS 138.550 "places the burden on the petitioner to show that an omitted ground for relief comes within the escape clause").

[4] Petitioner has asked this court to take judicial notice of the case registers in her underlying criminal case, as well as in Jeffrey Tiner's case, and the state has not objected. *See* OEC 201(b)(2) (court may take judicial notice of sources whose accuracy cannot reasonably be questioned). We therefore take judicial notice of the fact that petitioner and Jeffrey Tiner were tried separately, and indeed, that Jeffrey Tiner was not tried until 2000, after petitioner's conviction became final.

the *Brady* materials before Jeffrey Tiner's counsel informed her of their existence in 2012.

In a reply memorandum, the state again urged that

"petitioner has not pleaded any ultimate facts showing why she was supposedly unable, until 2012, to discover what was in the prosecutor's Tiner file. Even more importantly, petitioner has not submitted any evidence proving that she was unable, until 2012, to discover what was in the prosecutor's file."

The state asserted that petitioner had had "ample opportunity" to seek the Tiner file, and that it was "self-evident" that it would have been possible for petitioner's first post-conviction counsel to have subpoenaed the prosecutor's Tiner file and reviewed it for information that might have been helpful to petitioner's first post-conviction action. The state argued that petitioner had not shown that her counsel in the first post-conviction action could not have discovered the materials and asserted a timely *Brady* claim.

The trial court granted the state's motion for summary judgment without elaboration and entered a general judgment for the state, in which it concluded that there were no genuine issues of material fact and that the state was entitled to judgment as a matter of law.

On appeal, petitioner argued that the trial court had erred in granting the state's motion for summary judgment, asserting that the *Brady* materials at issue were not reasonably available to petitioner until they were provided to her in 2012. In response, the state pointed out that, in its answer to the petition, it had not admitted that the *Brady* materials had not been provided to petitioner prior to 2012. However, the state further stated that it had assumed, for purposes of summary judgment, that "those records were not properly disclosed to her and that she suffered prejudice, as she had alleged."

As it had before the trial court, the state urged that, under the identically-worded escape clauses in ORS 138.510(3)(b) (setting limitation period as two years after criminal judgment becomes final) and ORS 138.550(3) (barring claims that were not asserted in the original or amended

petition for post-conviction relief), petitioner had not shown that her claim could not reasonably have been raised in her first post-conviction action. The state noted, in particular, that petitioner had not presented evidence that the District Attorney's office had actively concealed the file, and the state opined that, if counsel had used "reasonable diligence," the *Brady* materials could have been discovered. Again, consistently with its argument before the trial court, the state asserted that the escape clauses under ORS 138.510(3)(b) and ORS 138.550(3) were not available "where the information always existed and was readily available to [petitioner] but her counsel just did not think to inquire about it."

The Court of Appeals affirmed the grant of summary judgment on petitioner's *Brady* claim, but on a different ground than the state had asserted in its motion before the trial court. The Court of Appeals observed that, under *Verduzco*, petitioner bore the burden of proving that her claim fell within a statutory escape clause. *See* 360 Or at 722 n 3, above. It therefore opined:

> "Consequently, to withstand the state's motion for summary judgment petitioner had the burden of coming forward with admissible evidence that would permit a reasonable factfinder to find that the escape clause applied to the *Brady* claim. * * *
>
> "Petitioner did not meet that burden here. The summary judgment record contains a significant evidentiary gap: Petitioner submitted no evidence regarding what was known to petitioner and her post-conviction lawyer at the time of the 1999 post-conviction proceeding.[5] Petitioner did not submit an affidavit from her 1999 post-conviction lawyer, or any other evidence about what facts that lawyer knew during the 1999 post-conviction case. Petitioner also did not submit her own affidavit, or any other evidence about what she herself knew during the 1999 post-conviction proceeding. * * *

_____

[5]   We note that the petition adequately pleaded that the *Brady* ground for relief falls within the escape clause; it alleged that the facts underlying petitioner's claim were not disclosed to any lawyer representing petitioner until 2012. However, once the state tested those pleadings by moving

for summary judgment, petitioner was required to come forward with evidence that would permit a reasonable fact-finder to find that petitioner had proved those allegations."

273 Or App at 794, 794 n 5.

The Court of Appeals did not address the parties' arguments before the trial court and on appeal concerning whether the *Brady* claim reasonably could have been raised in the original petition. The court explained:

"In the light of our conclusion that the summary judgment record would not permit a reasonable factfinder to find that petitioner and her post-conviction lawyer did not know the facts on which her *Brady* claim depends, we do not address the parties' competing arguments as to whether and what extent a post-conviction petitioner who does not discover the facts underlying a *Brady* claim until after a first post-conviction proceeding must demonstrate that she affirmatively investigated whether the prosecution might have violated its *Brady* obligations in order to demonstrate that the Brady claim could not reasonably have been raised in the original petition, or their competing arguments as to whether due process would permit a state to impose that type of investigatory obligation on a petitioner."

*Id.* at 795 n 7. Petitioner sought review in this court, which we allowed.

## II.  POST-CONVICTION RELIEF AND *BRADY* CLAIMS

Under the Post-Conviction Hearing Act, a petitioner who has been convicted of a crime may obtain collateral relief if the petitioner establishes "[a] substantial denial in the proceedings resulting in petitioner's conviction *** under the Constitution of the United States, or under the Constitution of the State of Oregon, or both, and which denial rendered the conviction void." ORS 138.530(1)(a). However, "[w]hen a criminal defendant fails to raise an issue at trial that the defendant reasonably could have been expected to raise, the defendant cannot obtain post-conviction relief on that ground unless the defendant alleges and proves that the failure to raise the issue was due to one (or more) of a few narrowly drawn exceptions." *Palmer v. State of Oregon*, 318 Or 352, 358, 867 P2d 1368 (1994). One such exception

is triggered where a claim was not raised in the petitioner's underlying criminal prosecution due to inadequate assistance of counsel. *Id.* Other exceptions include "where the right subsequently sought to be asserted was not generally recognized to be in existence at the time of trial," and "where counsel was excusably unaware of facts that would have disclosed a basis for the assertion of the right." *Id.* at 357 (quoting *North v. Cupp,* 254 Or 451, 456-57, 461 P2d 271 (1969)).

The gravamen of a *Brady* violation claim that is first raised in a post-conviction action is a species of the third category mentioned above: that trial counsel was excusably unaware of evidence favorable to the defense because the state had breached its obligation to disclose such evidence to the defense. *See, e.g., State v. McDonnell,* 313 Or 478, 500, 837 P2d 941 (1992) ("if the state has knowledge of evidence favorable to the defense or exculpatory in nature, the state is under an affirmative due process obligation to make it available to the defense"). When *Brady* materials are not discovered until more than two years after a criminal defendant's conviction has become final, or until after the criminal defendant has already litigated an action for post-conviction relief, then ORS 138.510(3) and ORS 138.550(3) come into play.

As noted, ORS 138.510(3) provides:

"A petition pursuant to ORS 138.510 to 138.680 must be filed within two years of the following, unless the court on hearing a subsequent petition finds *grounds for relief asserted which could not reasonably have been raised in the original or amended petition*:

"(a)   If no appeal is taken, the date the judgment or order on the conviction was entered in the register.

"(b)   If an appeal is taken, the date the appeal is final in the Oregon appellate courts.

"(c)   If a petition for certiorari to the United States Supreme Court is filed, the later of:

"(A)   The date of denial of certiorari, if the petition is denied; or

"(B)   The date of entry of a final state court judgment following remand from the United States Supreme Court."

(Emphasis added.) And, as further noted, ORS 138.550(3) provides:

> "All grounds for relief claimed by petitioner in a petition pursuant to ORS 138.510 to 138.680 must be asserted in the original or amended petition, and any grounds not so asserted are deemed waived unless the court on hearing a subsequent petition finds *grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition.* However, any prior petition or amended petition which was withdrawn prior to the entry of judgment by leave of the court, as provided in ORS 138.610, shall have no effect on petitioner's right to bring a subsequent petition."

(Emphasis added.)

This court has held that a petitioner who files a late or successive petition for post-conviction relief that is subject to ORS 138.510(3) or ORS 138.550(3),[5] must allege and ultimately demonstrate that the grounds for relief asserted in the petition could not reasonably have been raised in a timely initial action. *See Verduzco v. State of Oregon*, 357 Or 553, 561, 355 P3d 902 (2015) ("if petitioner could not reasonably have raised the grounds for relief alleged in his second petition either in a timely fashion or in the first petition, then those state procedural bars do not prevent petitioner from pursuing the grounds for relief alleged in his second post-conviction petition"). Moreover, this court has interpreted ORS 138.550(3) as "plac[ing] the burden on the petitioner to show that an omitted ground for relief comes within the escape clause." *Id.* at 565 (citing *Cain v. Gladden*, 247 Or 462, 464, 430 P2d 1015 (1967)). *Cain*, in turn, upheld the dismissal of a petition for post-conviction relief on the ground that the petitioner had "failed to allege in his petition facts to demonstrate that the * * * grounds for relief could not reasonably have been asserted *in the direct appellate review*." 247 Or at 464 (emphasis added).[6]

---

[5] As a practical matter, successive post-conviction actions often are barred both under ORS 138.510(3) and ORS 138.550(3).

[6] Our interpretation of the escape clause in ORS 138.550 drew from the same line of cases that this court relied on in *Palmer*.

To summarize the governing principles: If a post-conviction petitioner alleges that, during the course of her criminal prosecution, the state had knowledge of evidence favorable to the defense or exculpatory in nature, but failed to disclose that evidence in violation of the *Brady* rule, the petitioner must plead, and ultimately prove, that her criminal trial counsel "'was excusably unaware of facts that would have disclosed a basis for the assertion of the right'" on direct appeal. *Palmer*, 318 Or at 357 (quoting *North* 254 Or at 456-57). Stated differently, a *Brady* violation claim, like most other post-conviction claims, must have been raised in the direct criminal proceeding unless counsel was excusably unaware of it. *See, e.g., State v. Longo*, 341 Or 580, 599-600, 148 P3d 892 (2006), *cert den*, 552 US 835 (2007) (analyzing *Brady* claim in context of direct criminal appeal). That is so regardless of whether a post-conviction action is timely, untimely under ORS 138.510(3), or successive under ORS 138.550(3). If a post-conviction petition is untimely or successive, however, the petitioner must further plead and prove not only that her criminal trial counsel was excusably unaware of the basis for the *Brady* claim, but also that the claim could not reasonably have been raised either within the two-year period set out in ORS 138.510 or in the original action for post-conviction relief.

With that framework in mind, we turn to the question whether the state was entitled to summary judgment on petitioner's *Brady* violation claim in this case. Initially, we note that the parties have focused in part on whether petitioner's first post-conviction counsel reasonably could have discovered David Tiner's prior convictions by searching for records in other jurisdictions. That focus is misplaced. As discussed, the gravamen of a *Brady* claim is that exculpatory evidence was withheld *by the prosecution*. The fact that exculpatory evidence comes to light after a conviction becomes final does not, in and of itself, give rise to any post-conviction claim, much less a *Brady* claim. It might form the basis for a *Brady* claim if the evidence was known to the prosecution; it also might form the basis for a claim of inadequate assistance of trial counsel if counsel reasonably should have discovered it. But the question here is not whether counsel reasonably should have discovered David

Tiner's prior convictions as of 1999, but whether counsel reasonably should have discovered that the prosecutor had withheld information pertaining to those convictions as well as the police reports concerning Distabile.

With that preface in mind, we turn to the parties' primary dispute, which concerns whether the trial court and the Court of Appeals properly applied the summary judgment standards in ORCP 47 C.

### III.   SUMMARY JUDGMENT STANDARDS

ORCP 47 C provides:

"The court shall grant the motion if the pleadings, depositions, affidavits, declarations and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law. No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment. The adverse party has the burden of producing evidence on any issue raised in the motion as to which the adverse party would have the burden of persuasion at trial. The adverse party may satisfy the burden of producing evidence with an affidavit or a declaration under section E of this rule."

When a party seeks summary judgment, a court must view the pleadings, as well as any "depositions, affidavits, declarations and admissions" that the parties have submitted in support of or in opposition to the summary judgment motion, in the light most favorable to the nonmoving party. ORCP 47 C.

In *Two Two v. Fujitec America, Inc.*, 355 Or 319, 324, 325 P3d 707 (2014), this court observed that, under ORCP 47 C, "the party opposing summary judgment has the burden of producing evidence on any issue '*raised in the motion*' as to which [that party] would have the burden of persuasion at trial." (Emphasis added.) Because it plays a prominent role in our analysis, we describe the facts and holding in that case in some detail.

In *Two Two*, the plaintiffs had asserted negligence and strict liability claims concerning a faulty elevator, and the defendant sought summary judgment on both claims. *Id.* at 321. At issue was whether the trial court, and subsequently the Court of Appeals, had correctly disposed of the negligence claim on the ground that an expert affidavit submitted in opposition to the summary judgment motion (although addressing whether the defendant had been negligent in the manner alleged) had failed to demonstrate that there was a genuine issue of material fact as to causation. *Id.* at 323-24. This court noted that, in its motion, the defendant had raised issues of fact concerning whether it had properly modernized, inspected, and maintained the elevator, whether it was in control of the elevator at the time of the incident giving rise to the claim, and whether the doctrine of *res ipsa loquitur* was applicable. *Id.* at 324. The defendant did not, however, "raise in the motion" the issue whether its alleged negligence had been the cause of the plaintiffs' injuries. *Id.* at 325. Rather, it "first raised the issue of causation as a basis for summary judgment in its reply memorandum." *Id.*

In reversing judgment for the defendant, this court stated:

> "Parties seeking summary judgment must raise by motion the issues on which they contend they are entitled to prevail as a matter of law. Parties opposing summary judgment have the burden of producing evidence that creates a material issue of fact as to *those issues, but only as to those issues.*"

*Id.* at 326 (emphasis added).

As explained below, in light of the foregoing authorities, we conclude that both the trial court and the Court of Appeals erred in applying the summary judgment standards in this case, albeit in different ways. We first examine the trial court's rationale for granting summary judgment in favor of the state.

A.   *The Trial Court's Summary Judgment Ruling*

The issue that was raised in the state's summary judgment motion and decided by the trial court is whether

petitioner sufficiently "alleged" that she could not reasonably have raised her *Brady* claim during her first post-conviction action. We reiterate that point with emphasis: The state's summary judgment motion only challenged the sufficiency of petitioner's *pleadings* as to whether her claim fell within the escape clauses of ORS 138.510(3)(b) and ORS 138.550(3). In its motion, the state did not challenge petitioner's ability to prove what she had pleaded; instead, it merely challenged the sufficiency of petitioner's pleading. It is true that, in its reply to petitioner's response to the motion, the state asserted that "it would have been possible for petitioner's first post-conviction counsel to have subpoenaed the prosecutor's Tiner file and reviewed it," and argued that "petitioner has not submitted any evidence that she was unable, until 2012, to discover what was in the prosecutor's file." However, that issue was not "raised in the motion" for summary judgment. *See Two Two*, 355 Or at 325 (issue raised in movant's reply memorandum was not "raised in the motion" for summary judgment). Thus, the only issue properly before the trial court on summary judgment was whether petitioner had sufficiently pleaded that her *Brady* claim fell within a statutory escape clause.

The allegations that petitioner pleaded in support of her *Brady* violation claim were straightforward, and can be summarized as follows: (1) The District Attorney's office had knowledge or possession of evidence that petitioner could have used in her criminal trial to impeach two of the state's witnesses against her; (2) the District Attorney's office failed to provide that evidence to petitioner's criminal trial counsel in violation of her due process rights; (3) petitioner's counsel were unaware of the evidence until it was disclosed to petitioner's counsel in 2012 by an attorney who represented a different petitioner, in a different, albeit factually related, post-conviction action; and (4) petitioner could not reasonably have raised her *Brady* violation claim in her first post-conviction action.

As described above, the state's summary judgment motion rested on two premises: (1) the *factual* assertion that "it would have been possible for petitioner's first post-conviction counsel to have subpoenaed the prosecutor's

Jeffrey Tiner file and reviewed it for information that might have been helpful to petitioner's first post-conviction proceeding"; and (2) the legal proposition that the failure of petitioner's first post-conviction counsel to request and examine the Jeffrey Tiner file precluded petitioner from asserting in a subsequent action that the *Brady* claim "could not reasonably have been raised in the original or amended petition."

Even though its summary judgment motion was based solely on the ground that petitioner's *pleadings* were insufficient to bring her *Brady* violation claim within the escape clauses of ORS 138.510(3)(b) and ORS 138.550(3), the state's first premise rested on the factual assertion that, if petitioner's counsel had sought to examine the District Attorney's file in the Jeffrey Tiner case in her first post-conviction action, counsel would have been able to do so and would have discovered the *Brady* materials that had been withheld from petitioner during her criminal case. But there is no basis in the record for that assertion. Although it is possible, as a *factual* matter, that the *Brady* materials were located in the Jeffrey Tiner file in 1999 and that, upon request, the District Attorney's office would have disclosed them to petitioner's post-conviction counsel, the state did not raise those issues as factual matters for resolution on summary judgment. Rather, the state's motion (which focused exclusively on petitioner's allegations) called for the court to presume that in 1999, the *Brady* materials were in the same location where there were later discovered in 2012, and that the District Attorney's office that had failed to disclose them in 1995 would have disclosed them in 1999 if petitioner's counsel specifically had sought to review materials from the Jeffrey Tiner file. Given the limited basis of the state's challenge, it was inappropriate for the court to make that presumption.

That leads us to the second point. The state's remaining premise—that, as a matter of law, the failure of petitioner's first post-conviction counsel to seek access to the Jeffrey Tiner file precluded petitioner from asserting in this action that the *Brady* claim could not reasonably have been raised in the first action—also did not provide an appropriate ground for summary judgment on the record before us.

In some post-conviction cases, where the question is whether a claim reasonably could have been raised in a prior action, the issue will be a legal one, capable of resolution on summary judgment. For example, a common issue in successive post-conviction actions is whether counsel in an earlier post-conviction action reasonably could have been expected to raise a claim that later appellate case law demonstrated would have been viable. *See, e.g., Verduzco*, 357 Or at 571 (addressing whether ineffective assistance of counsel claim could have been raised in earlier post-conviction proceeding, based on counsel's alleged failure to provide sufficient information about immigration consequences of guilty plea).[7] Whether such a claim "reasonably could have been raised earlier will vary with the facts and circumstances of each claim." *Id.* But, because such a question generally will involve an assessment of the state of the law at a given point in time, it may lend itself to resolution by summary judgment because there may well be "no genuine issue as to any material fact and *** the moving party is entitled to prevail as a matter of law." ORCP 47 C.

The same is not necessarily true of a *Brady* violation claim. As discussed, the gravamen of such a claim is that the state had an obligation to disclose, but did not disclose, evidence that was material either to guilt or to punishment in a petitioner's criminal case. Whether a petitioner reasonably could have been expected to raise a *Brady* violation claim in a timely initial post-conviction action often will depend on who knew what, and when. That is, the resolution of such an issue can depend on "the facts and circumstances of each claim." *Verduzco*, 357 Or at 571. But, where, as here, petitioner alleged that no counsel who represented her knew

---

[7] On that issue, this court held:

"The touchstone is not whether a particular question is settled, but whether it reasonably is to be anticipated so that it can be raised and settled accordingly. The more settled and familiar a constitutional or other principle on which a claim is based, the more likely the claim reasonably should have been anticipated and raised. Conversely, if the constitutional principle is a new one, or if its extension to a particular statute, circumstance, or setting is novel, unprecedented, or surprising, then the more likely the conclusion that the claim reasonably could not have been raised."

*Id.* at 571 (quoting *Long v. Armenakis*, 166 Or App 94, 101, 999 P2d 461, *rev den*, 330 Or 361 (2000)).

of the *Brady* materials until 2012, and nothing in the record indicates that she or her counsel had information that might have revealed the existence of the materials before then, the trial court had no basis on which to decide, as a matter of law, that counsel reasonably should have known of the claim.

In this case, there is much that is not known (and that cannot be presumed as a matter of law) about the nature of the alleged *Brady* violation that could be pertinent to the issue whether petitioner's first post-conviction counsel reasonably should have discovered the basis for the claim. Among those factual questions are: Where were the allegedly exculpatory materials located when petitioner's first post-conviction case was pending? Were those materials made available to Jeffrey Tiner's criminal defense team in 1999, or were they made public in the course of Jeffrey Tiner's trial in 2000? Did petitioner's first post-conviction counsel have any information that would have revealed that the state had the evidence at issue during petitioner's criminal prosecution? The answers to those questions—and others—could have a bearing on whether petitioner's *Brady* violation claim could "reasonably have been raised in the original or amended petition." However, again, the state's motion did not put those factual matters at issue, and the trial court therefore had no basis to conclude as a matter of law that petitioner's counsel in the first post-conviction action reasonably could have asserted a *Brady* violation claim. It follows that the trial court erred in determining that there existed no genuine issue of material fact, and that the state was entitled to judgment as a matter of law.

The Court of Appeals nevertheless affirmed the trial court's summary judgment ruling, albeit on a different ground. Accordingly, we turn to that court's rationale for affirmance.

B.  *The Court of Appeals' Rationale*

The Court of Appeals, relying on *Verduzco* for the proposition that petitioner bore the burden of establishing that her *Brady* violation claim fell within a statutory escape clause, concluded that, "to withstand the state's summary

judgment motion," petitioner was required, but failed to, "come forward with admissible evidence that would permit a reasonable factfinder to find that the escape clause applied to the *Brady* claim." 273 Or App at 794. More particularly, the Court of Appeals held that petitioner was required to, but did not, submit evidence in response to the state's summary judgment motion regarding "what facts [her post-conviction] lawyer knew during the 1999 post-conviction proceeding" and "what she herself knew during the 1999 post-conviction proceeding." *Id.*

In reaching that conclusion, the Court of Appeals erred in applying the "raised in the motion" provision of ORCP 47 C. Here, defendant's summary judgment motion on the *Brady* claim asserted only one ground, namely, that petitioner had not "alleged any ultimate facts demonstrating that she was reasonably unable, when she first sought post-conviction relief, to discover that impeachment material was allegedly withheld by a prosecutor or not made available to petitioner's underlying defense counsel in 1995." That is, the state's sole challenge to petitioner's *Brady* claim was that, *as alleged*, that claim was insufficient to trigger the escape clause of either ORS 138.510(3) or ORS 138.550(3).

Among petitioner's allegations were her assertions that the *Brady* materials "were never disclosed to any attorney working on behalf of Petitioner until Mr. Simrin caused them to be delivered to Petitioner's attorney in this post-conviction proceeding." Because the state challenged only petitioner's allegations and not her ability to prove those allegations, the state did not "raise in the motion" the issue whether petitioner would be able to meet her burden of proving that none of the attorneys who had represented her before 2012 had knowledge of the *Brady* materials.[8] Nor did the state's motion raise the other issue cited by the Court of Appeals—that petitioner was required to allege, and submit an affidavit in support of such allegation, that she personally lacked knowledge of the *Brady* violation at the

---

[8] In *Ogle v. Nooth*, 355 Or 570, 330 P3d 572 (2014), this court discussed the requirement in ORS 138.580 that materials supporting a post-conviction claim must be attached to the petition. The trial court proceedings in this case occurred before *Ogle* was decided, and no issue has been raised as to whether petitioner's filing complied with ORS 138.580. We therefore do not address that issue.

time of her original post-conviction action. 273 Or App at 794. In short, the state's argument in the post-conviction court, which it reiterated before the Court of Appeals, had nothing to do with what petitioner or her counsel actually knew about the *Brady* materials at the time of the first post-conviction action. Rather, the state's premise was that petitioner reasonably could have raised the *Brady* claim in the first action if her counsel had sought access to the Jeffrey Tiner file from the District Attorney's office in 1999.

Under *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001), an appellate court may affirm a trial court's ruling on an alternative basis if, among other things, it can conclude that the record is materially "the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below." That criterion is of particular importance where, as here, the opposing party had no reason to adduce evidence on an issue that was not raised in the summary judgment motion. *See, e.g., Petock v. Asante*, 351 Or 408, 425, 268 P3d 579 (2011) (rejecting alternative basis for affirming summary judgment because the court could not conclude that the record was materially the same one that would have been developed had the defendant raised the alternative basis for affirmance in its summary judgment motion). In opposing the state's summary judgment motion, petitioner was required to address issues raised in the motion, but *only* those issues. *Two Two*, 355 Or at 326. Because it would have been improper for the trial court to grant summary judgment based on the ground that the Court of Appeals identified, that ground did not provide an alternative basis to affirm on appeal. We therefore conclude that the Court of Appeals' rationale for upholding the trial court's ruling does not withstand scrutiny.[9]

---

[9] That said, we recognize that there may be viable arguments in this type of case that failure to disclose information to defense attorneys does not constitute a *Brady* violation because the criminal defendant or defense counsel knew the information from other sources. *See, e.g., United States v. Agurs*, 427 US 97, 103, 96 S Ct 2392, 49 L Ed 2d 342 (1976) (*Brady* applies to "information which had been known to the prosecution but unknown to the defense"). Similarly, a post-conviction petitioner's own personal knowledge of the basis for a *Brady* violation claim that she failed to communicate to post-conviction counsel may defeat an argument that she falls within the escape clauses of ORS 138.510(3) or ORS 138.550(3). We cannot conclude, however, that a post-conviction petitioner is

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to that court for further proceedings.

---

required, in her initial pleading, to rebut every possible defense to a claim, or to negate such a defense in response to a motion for summary judgment, when the moving party has not raised the issue.