***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

Argued and submitted March 4, 2022, reversed and remanded March 22, 2023

Jessica PERCZAK,
*Plaintiff-Appellant,*

*v.*

GREENHILL HUMANE SOCIETY
AND SOCIETY FOR THE PREVENTION
OF CRUELTY TO ANIMALS,
dba 1st Avenue Shelter,
*Defendant-Respondent,*

*and*

STATE OF OREGON
and Does 1-10,
*Defendants.*

Lane County Circuit Court
19CV08404; A174574

Charles D. Carlson, Judge.

Geordie Duckler argued the cause and filed the briefs for appellant.

Anna Elizabeth Esfeld argued the cause for respondent. Also on the brief was Jeffrey W. Daly.

Before Aoyagi, Presiding Judge, and Lagesen, Chief Judge, and Joyce, Judge.*

LAGESEN, C. J.

Reversed and remanded.

_____
  * Lagesen, C. J., *vice* James, J. pro tempore.

**LAGESEN, C. J.**

Defendant Greenhill Humane Society took custody of plaintiff's dog Bella after defendant was arrested and jailed in Eugene on criminal charges. Defendant notified plaintiff that she needed to contact it by a certain date to make arrangements for her dog's care, otherwise, the dog would be eligible to be adopted out or euthanized. After plaintiff did not contact defendant in the specified time period, defendant adopted out Bella.

Plaintiff then brought this action for declaratory relief and replevin against defendant, the State of Oregon, and unidentified individuals alleged to have adopted Bella from defendant. Plaintiff requested a declaration that (a) she remained the owner of her dog and had not relinquished her interest in her dog; (b) no other defendant had acquired title in or right to her dog; and (c) plaintiff's title in the dog was superior to all competing claims to the dog. She also requested replevin, claiming a right to the immediate delivery of her dog. On cross-motions for summary judgment filed by plaintiff and defendant,[1] the trial court denied plaintiff's motion and granted defendant's motion, concluding that plaintiff abandoned her interest in her dog when she did not respond to defendant's notice. Thereafter, the court entered a general judgment of dismissal. For the reasons that follow, we reverse and remand.

As noted, the trial court resolved this matter on cross-motions for summary judgment. On appeal, plaintiff assigns as error the trial court's "granting judgment to Defendant," but does not assign error to the court's denial of plaintiff's motion for entry of judgment in her favor. Accordingly, the only issue before us is whether the trial court erred in granting defendant's motion for summary judgment as a matter of law.

On that question, our review is for legal error to determine whether there are any genuine issues of material

---

[1] The parties titled their motions as motions for "summary adjudication," rather than motions for summary judgment. On appeal, neither party suggests that the process they followed was anything other than summary judgment under ORCP 47, so we treat them as such.

fact and whether the moving party is entitled to judgment as a matter of law. *Woodroffe v. State of Oregon*, 292 Or App 21, 23, 422 P3d 381 (2018). We may only affirm a grant of summary judgment on a ground that was raised in the motion in the trial court; we may not affirm on an alternative ground that was not raised in the motion. *Eklof v. Steward*, 360 Or 717, 736, 385 P3d 1074 (2016). That follows from the Supreme Court's holding in *Two Two v. Fujitec America, Inc.*, 355 Or 319, 324, 325 P3d 707 (2014), that it is impermissible for a trial court to grant a motion for summary judgment on a basis not raised in the motion. That is generally because a grant of summary judgment to a party on a ground not raised in its motion deprives the opposing party of the opportunity to respond to it, including the opportunity to present evidence that might give rise to a factual dispute. *Woodroffe*, 292 Or App at 27.

With those standards in mind, we turn to the issues raised by this appeal. The historical facts are not contested.

This dispute arose after plaintiff, who was traveling with her dog Bella on a road trip from San Diego to Portland, was arrested and detained in Eugene for reckless driving and eluding police. Plaintiff did not identify anyone who could care for her dog while she was in custody, so the arresting officer, a member of the University of Oregon's Police Department (UOPD), contacted Eugene animal control to take custody of Bella in accordance with department policy.[2] After plaintiff's dog was placed in the custody of the animal control authority, an "Animal Services Impound Report" was completed. The report states that plaintiff's dog was impounded on October 22, 2018, at 11:50 p.m.,[3]

---

[2] *See* UOPD 820.6 (2018) (providing post-arrest procedures: if no persons can be found, or the owner does not consent to contacting relatives or neighbors, the appropriate animal control authority should be notified); *see also* UOPD 900.4.3 (2018) (explaining that "live animals" are arrestee property that is prohibited from being inventoried and stored in the UOPD Safekeeping area; therefore, officers "will attempt to place any live animals in the care of animal shelter for their safekeeping"). At the time of her arrest, the 2018 version of the UOPD was in effect, but it has since been amended. Thus, any references in this opinion are to the 2018 version of the UOPD.

[3] Plaintiff argues that her "dog was never 'impounded' pursuant to any applicable code section or regulation." Although plaintiff's arguments are not entirely clear, we do not understand plaintiff to argue that Bella was not, as a matter

and stated that plaintiff's dog "came into custody" because plaintiff was arrested for driving recklessly and eluding police while her dog was in the car.

Upon impounding Bella, the city placed her in defendant's care. Under defendant's contract with the City of Eugene, defendant provides care and shelter to the city's impounded animals. That includes animals who are placed with defendant under a "safekeep," which is defined as an animal whose owner is in an emergency situation, including incarceration. Per its contract, defendant's safekeeping protocol outlines the parameters of what situations constitute a safekeep, how notifications will be made to the owner, duration of stay and what fee requirements will be made before the animal is returned to its owner. Under defendant's "Stray Hold Periods" protocol, a five-business-day hold is applied to animals whose owner is known. A "letter of impound" is sent by USPS priority mail to the jail and the owner's last known address. The notice explains the five-business-day hold and redemption fees that must be paid for the animal's care. Further, the notice explains that after the hold period expires, defendant may adopt out or euthanize the animal. The notice states that the recipient "must contact the shelter immediately in person or by phone to preserve your ownership rights."

Three days after Bella was impounded by the city, defendant sent a "Notice of Impound" to plaintiff at her last known home address as well as the Lane County Jail where plaintiff was in custody. The notice was delivered to the jail on October 27, 2018, and plaintiff received it. The notice directed plaintiff to contact the shelter before 5:00 p.m. on November 1, 2018, regarding Bella and stated further that defendant may adopt out or euthanize the dog if plaintiff failed to contact defendant. Neither defendant, nor anyone acting on her behalf, contacted defendant on or before the deadline. Defendant adopted out the dog the next day.

_____

of historical fact, impounded. The undisputed facts demonstrate that the city impounded her and placed her in defendant's custody. Rather, we understand the gravamen of plaintiff's argument to be that the impoundment was not authorized by the Eugene City Code, and that that alleged illegality means that plaintiff maintains her ownership interest in Bella.

Upon discovering that defendant had adopted out Bella, plaintiff filed this action. In addition to defendant, she named the University of Oregon and 10 unidentified individuals, John Does (1-10); plaintiff alleged that the unidentified individuals were the ones who adopted Bella from defendant.

The record reflects that plaintiff never served the individual Doe defendants; this appears to be because defendant opposed plaintiff's request to identify them. The trial court dismissed the University of Oregon from the case. Thereafter, as noted, plaintiff and defendant filed cross-motions for summary judgment. Defendant argued that it was entitled to summary judgment on the ground that by failing to respond to its notice, plaintiff "abandoned the dog under [Eugene City Code (ECC)] section 4.350." Further, defendant argued that once Bella was abandoned under ECC 4.350, "she became subject to Section 4.370(1)," allowing "[a]ny peace officer or animal control officer [to] impound an animal that is in violation of this code." By abandoning Bella under ECC 4.350 in a way that made her subject to ECC 4.370(1), defendant argued, plaintiff forfeited her rights to Bella. Responding to that contention, plaintiff asserted that it did not provide a basis for summary judgment because, among other things, plaintiff had not been charged with, let alone convicted of, abandoning Bella in violation of ECC 4.350.

The trial court ruled in favor of defendant, granting defendant's motion for summary judgment. Noting plaintiff's argument, the court opined that plaintiff's lawyer's argument was "the only legal course to urge the Court to disregard Plaintiff's clear violation of Eugene City Code provisions defining animal abandonment." The court agreed with defendant that ECC 4.350 applied because "[c]ommon law principles regarding the transfer of chattel may be modified by properly enacted laws and regulations when dealing with live animals." The court then explained:

"It seems well settled that Oregon law provides that 'humans are prohibited from treating animals in ways that humans are free to treat other forms of property.' The animal has to be properly cared for and in this case defendant provided that care pursuant to its agreement with the City

of Eugene and in full compliance with the provisions of the city code. Defendant sent a letter informing the Plaintiff that the dog was in their care and provided her with a period of 5 business days to contact them and arrange care for the dog. The Plaintiff failed to take the necessary steps to contact the Defendant within that period and, by failing to do so, she relinquished her right to the dog under the Eugene City Code and the dog was properly impounded and subsequently adopted. Therefore, the Court denies Plaintiff's Motion for Summary Judgment and grants the Defendant's Countermotion."

(Citation omitted.)

Subsequently, the court entered a general judgment of dismissal based upon its findings and order from the summary judgment proceeding. Plaintiff appealed.

On appeal, plaintiff assigns error to the court's grant of summary judgment to defendant. She argues that the court erred in concluding that she abandoned her dog under ECC 4.350 resulting in the forfeiture of her rights to the dog and its impoundment under ECC 4.370(1). She argues that the court's legal conclusion does not square with the undisputed facts that (1) Bella was impounded and placed at defendant as part of a "safekeep protocol" and (2) was not impounded based on a determination that plaintiff had abandoned Bella in violation of ECC 4.350, so as to allow for impoundment under ECC 4.370(1).

In response, defendant no longer argues, as it did below, that plaintiff abandoned Bella under ECC 4.350 in a way that permitted impoundment under ECC 4.370(1). Instead, defendant now argues that plaintiff abandoned Bella under ECC 4.350 when she did not respond to the letter in a way that permitted impoundment under a different provision: ECC 4.370(6). That provision states:

"If there is probable cause to believe that any animal is being subjected to treatment in violation of 4.335 to 4.350, a peace officer, after obtaining a search warrant in the manner authorized by law, may enter the premises where the animal is being held, provide food and water and impound such animal. If after reasonable search the owner or person having custody of such animal cannot be found and notified of the impoundment, such notice shall

be conspicuously posted on such premises and within 72 hours after the impoundment such notice shall be sent by certified mail to the address, if any, at which the animal was impounded.

ECC 4.370(6). On the basis of that argument, defendant asserts that summary judgment in its favor should be affirmed.

Defendant's new argument does not provide a basis for affirming the grant of summary judgment in its favor for two reasons. First, the terms of ECC 4.370(6) do not address the facts of this case. Bella was not seized with a search warrant based on probable cause of a violation of the animal regulations in the Eugene City Code. The provision is inapposite on its face. Second, even if it plausibly had some bearing on this case, that was not the theory of summary judgment that defendant raised in its motion below. As a result, under *Eklof*, the contention does not provide a basis for affirmance. *Eklof*, 360 Or at 736.

As for the basis on which the trial court in fact granted summary judgment to defendant, we agree with plaintiff that it was in error. That is because the rationale on which the court relied does not track with the facts of this case. The court concluded that petitioner "relinquished" her rights to Bella under the Eugene City Code when she did not respond to defendant's notice, which then permitted defendant to impound Bella and adopt her out. The difficulty with that line of analysis is that the undisputed facts show that the city impounded Bella on the night plaintiff was arrested as part of a safekeeping protocol, not later at the time that plaintiff failed to respond to defendant's Notice of Impound, which alerted plaintiff that her "dog[] was impounded" at defendant's shelter.[4] Further, the undisputed facts demon-

---

[4] Plaintiff's motion contended that (1) safekeeping was not a form of impoundment listed under ECC 4.370; (2) ECC 4.370 was the only legal authority to impound an animal, and thus (3) Bella was not impounded because she was taken into custody "as part of a safekeep protocol" and not because of any of the six conditions listed in ECC 4.370. Below, defendant did not dispute the contention that Bella was placed into custody under safekeeping and that safekeeping was not a form of impoundment under ECC 4.370. Thus, the parties appear to have proceeded below as if Bella had never been impounded by the city. However, the undisputed facts in the record indicate that Bella was impounded. The Animal Services Impound Report states that she was impounded, as does

strate that Bella was not, as defendant's argument and the trial court's reasoning contemplate, impounded based on a finding of a code violation related to Bella. Rather, the Animal Services Impound Report states that Bella was impounded because plaintiff "was arrested for driving recklessly and eluding police. Bella was in the car with her."

Given the facts of this case, the specific legal question presented appears to be whether plaintiff, as a matter of law, relinquished her rights to Bella when she did not respond to the "Notice of Impound" that defendant sent under the circumstance present. Because none of the provisions of the Eugene City Code on which defendant relies address the facts of this particular case, they do not provide a basis for concluding that defendant is entitled to judgment in its favor as a matter of law. Because defendant has not identified a source of law entitling it to judgment as a matter of law, we reverse and remand. Although there may be a basis in the Eugene City Code to conclude that plaintiff's failure to respond to the Notice of Impoundment means she relinquished her interests in Bella as a matter of law under these factual circumstances, defendant has yet to identify that basis, and it is not our role to develop an alternative legal argument for defendant.

Two further points merit mention to guide the proceedings on remand. The first is that it is not clear that the issue of whether plaintiff retains her rights in Bella can be adjudicated absent joinder of the party who adopted Bella; it is also unclear how the court could order Bella's return, as requested by plaintiff, unless that party is properly joined. Here, as noted, plaintiff named the individuals alleged to have adopted Bella in the complaint but they have not been served with the complaint; it appears that this is because the trial court declined to compel defendant to identify them so as to permit plaintiff to properly serve them. That is an issue of jurisdiction with respect to plaintiff's declaratory judgment claim that must be addressed. *See Miller v. Shenk*, 272 Or App 12, 18, 354 P3d 732, *rev den*, 358 Or 374 (2015) (failure to join necessary party deprives court of jurisdiction

---

the "Notice of Impound" that defendant sent to plaintiff. The parties' legal arguments do not appear to have engaged fully with these facts.

to issue declaratory judgment). The second is that, because this case involves a claim for declaratory relief, it may not be resolved on the merits by a general judgment of dismissal, as it was here. If the case presents a justiciable controversy, the court must enter a judgment declaring the parties' respective rights. *East Side Plating, Inc. v. City of Portland*, 316 Or App 111, 112, 502 P3d 1192 (2021), *rev den*, 369 Or 675 (2022) (describing proper declaratory judgment procedure).

Reversed and remanded.